UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| CHRISTOPHER A. JOHNSON, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| *v.* | ) | No.1:08cv36 |
| | ) | *Edgar* |
| TED HARRIS et al., | ) | |
| | ) | |
| *Defendants.* | ) | |

## MEMORANDUM

Plaintiff Christopher A. Johnson brings this civil rights action against Ted Harris, a Hamilton County Probation Officer, in his individual and official capacities, Former Sheriff Billy Long, in his individual and official capacities, Jim Hart, Chief of the Hamilton County Jail, in his individual and official capacities, the Hamilton County Sheriff's Department, the Hamilton County Probation Department, and Hamilton County, Tennessee (collectively "Defendants"). Plaintiff claims that Defendants violated his Fourth, Fourteenth, and First Amendment rights under the U.S. Constitution and brings this action pursuant to 42 U.S.C. § 1983 ("Section 1983"). Plaintiff seeks compensatory and punitive damages, as well as injunctive relief.

Defendants move for summary judgment dismissal of Plaintiff's claims against them. [Court Doc. Nos. 28, 30]. Plaintiff has responded to the motion. [Court Doc. No. 34]. This court has reviewed the arguments of the parties, the record and the pertinent case law and has determined that Defendants' motion will be **GRANTED**.

### I. Background

Plaintiff, representing himself pro se, filed a complaint in this court against Defendants on February 10, 2008. [Court Doc. No. 3, Complaint]. The factual allegations of the Complaint

state in their entirety:

> Defendant Ted Harris violated plaintiffs [sic] due process rights pursuant to the 14th amendment because:
> a) He cause [sic] capias to be issued for plaintiff for failure to pay fees knowing plaintiff was unemployed and had no money
> b) He did not give plaintiff notice of the charges
> c) He did not allow plaintiff to review the evidence
> d) Did not allow plaintiff counsel
> e) Did not allow a reasonable promt [sic] hearing. The criminal court of Hamilton County Div 2 granted plaintiff's appeal on all the above grounds March of 2007. However, plaintiff had spent over 2 months in jail pursuant to defendant Harris [sic] action.
> f) Then defendant violated plaintiff's 1st amendment rights by retaliating against plaintiff for filing and winning appeal. He told plaintiff that he did not like clients filing things in court and He was going to start his probation all over and issue a capias to be issued against for plaintiff's arrest and He did so in May of 2007 even though plaintiff's probation period ended March 2007
> g) Defendant Harris violated plaintiff's due process rights by causing plaintiff to be arrested 2 month after his probation term had expired. He cause [sic] capias for plaintiff's arrest on May 9, 2007 even though term expired in March 2007 and plaintiff's [sic] was incarcerated for 50 more days pursuant to defendant's actions.
> h) Defendant Harris violated plaintiff [sic] 4th amendment rights by malicious prosecution and false arrest by the above f thru h because the [sic] was no probable cause. The Criminal Court for Hamilton County ruled that term expired March 2007 on July 2, 2007.
> 2. Defendant Billy Long violated plaintiff's due process and 4th amendments [sic] rights because plaintiff wrote him a letter stating the above that his probation term had expired and his former probation officer was retaliating. Sheriff Long did not respond, thus holding plaintiff in violation of due process and without probable cause and failure to correct the matter. Sheriff Long also failed to execute or enforce policies or customs that protect citizens from incarceration without probable cause. Plaintiff can not see how he can be held for probations violation and is not on probation. Sheriff Long also failed to implement a policy or custom that protects from such conduct.
> 3. Hamilton County, Tennessee is also liable for the same reasons as Sheriff Long.
> 4. Hamilton County, Tennessee Probation Department violated plaintiff [sic] right just as defendant Long and Harris
> 5. Defendant Jim Hart violated plaintiff's right the same as defendant Long, Hamilton County and probation Dept. Plaintiff also wrote him a letter explaining the above and he failed to act.

Complaint, ¶¶ 1-5. Plaintiff has also filed an affidavit in support of his opposition to the motion

for summary judgment. [Court Doc. No. 34-2]. The affidavit states in part:

> On April 26, 2007 defendant Ted Harris told me that he did not like probationers filing things in court and that he was going to request a capias for my arrest and have me arrested for doing so and start my probation over for doing so and when he has me arrested the next time for me not to make bond like I did the last time, for me to give him the money for fees. I told him well you know what to do if you do and that is to file this civil action. Ted Harris did so and filed a request for capias for my arrest, and my sentence had long expired when he did so and cause me to be falsely arrested and maliciously prosecuted.

*Id.*

Plaintiff and Defendants rely on similar court records to illuminate the factual background of this case. Even taking Plaintiff's allegations as true, the court finds that facially valid court orders demonstrate the underlying authority for Defendants' actions. Because Plaintiff himself relies upon the relevant court orders and Hamilton County probation records to demonstrate the facts of this case, the court has examined the records for an explanation of the events at issue. A review of the record, including such documents, reveals the following.

On December 12, 2005, Plaintiff was arrested for possession of marijuana. The Affidavit of Complaint filed with the General Sessions Court of Hamilton County states the following:

> I Officer Mansell, observed the def[endant] take a drink of Beer as he drove his vehicle in the 1100th bk of Market St. I stopped the vehicle to check for sobriety. I checked the drivers area before I let the def[endant] sit back in the vehicle. I observed a small plastic bag with a green leafy substance that looked like marijuana.

[Court Doc. No. 31-2, Affidavit of Complaint]. The Affidavit of Complaint was signed on December 28, 2005. On March 23, 2006 Plaintiff pled guilty to the charge of possession of marijuana. [Court Doc. No. 31-2]. The court imposed a sentence of 11 months and 29 days imprisonment, which was "suspended upon payment of fine and costs and good behavior for a period of eleven months and 29 days." *Id.* Although Plaintiff did not sign the judgment

indicating that he waived the right to counsel, the General Sessions Court Judge signed the waiver of counsel provision of the judgment. *Id.* The Plaintiff received a "Level II" probation in lieu of his sentence. *See* [Court Doc. Nos. 31-2, 31-3, 31-4]. In his opposition briefing Plaintiff asserts that he did not plead guilty.

The Order of Probation pertaining to Plaintiff's sentence states:

It is hereby ordered that, Christopher Johnson is sentenced to 11 months 29 days and that he/she is placed on Hamilton County Probation for a period of 6 months drug screens. Defendant shall comply with all the Court's conditions and the Rules and Standards of Hamilton County Probation. The defendant is hereby placed on LEVEL TWO (Monthly Visits) (Duration of Court Ordered drug testing). . . . Should the defendant fail to report or subsequently violate the Court's conditions or the Rules and Standards of Probation, a Request for Capias shall be filed with the assigning court and upon issuance of said Capias, the defendant shall be brought before the court for a revocation hearing.

[Court Doc. No. 31-4]. In bold, all capital letters at the side of the Order of Probation, it states,

"**FAILURE TO REPORT WITHIN 3 DAYS WILL RESULT IN A CAPIAS FOR YOUR ARREST!**" *Id.* Level II probation requirements include a monthly interview, submission to random drug testing, maintaining sobriety, being drug-free and completing any court-ordered conditions. *Id.* Plaintiff signed a Level Two Contract Agreement indicating his awareness of the conditions of his probation. [Court Doc. No. 31-5]. On March 28, 2006 Plaintiff signed a memorandum relating to procedures for complying with random drug screening requirements. [Court Doc. No. 31-5]. The memorandum clearly states that "[f]ailure to call in/report in for your drug screen is a violation of your probation."

On April 24, 2006 Defendant Ted Harris and the Assistant District Attorney General signed a Petition to Revoke Hamilton County Probation. [Court Doc. No. 31-6]. The petition sought revocation of the probation because Plaintiff tested positive for cocaine based on a

-4-

random drug test on April 19, 2006. *See* [Court Doc. No. 36-8]. On May 17, 2006 Judge Richard Holcomb signed the petition and ordered a capias to be issued and ordered Plaintiff's arrest. *Id.* According to the Uniform Arrest Report, Plaintiff was arrested at his home on November 10, 2006. [Court Doc. Nos. 31-7, 36-12].

On December 14, 2006 Plaintiff submitted a Petition for Post-Conviction Relief. [Court Doc. No. 31-8]. Among Plaintiff's complaints were allegations: (1) that his plea was not knowingly and intelligently entered; (2) that he was not advised that failure of a drug test would amount to revocation of probation; (3) that he was subject to inappropriate pressure by the judge to take the plea arrangement; and (4) that his attorney was ineffective for failing to investigate the state's lack of a drug report or possession of the marijuana. [Court Doc. No. 31-8]. Court records demonstrate that Plaintiff's probation was revoked on January 12, 2007 following a court hearing. [Court Doc. No. 34-2, 36-14].

On January 16, 2007 a Criminal Court Judge appointed counsel to represent Plaintiff due to the presence of "colourable claims" in Plaintiff's petition. [Court Doc. No. 31-9]. On January 22, 2007 Plaintiff filed a notice of appeal in which Plaintiff "appeal[ed] the revocation of probation proceeding" held on January 12, 2007. [Court Doc. No. 34-2]. Plaintiff raised a number of alleged violations of his due process rights in his notice of appeal, including not being provided with notice of the charges and not being allowed to review the evidence against him. *Id.* He also requested to be "released on bond pending appeal." *Id.*

The record reveals that on March 23, 2007 several orders were issued in Plaintiff's case. One order states in relevant part:

> It appears to the Court that the Petitioner's probation was revoked on the A [sic] charge of simple possession of marijuana in the General Sessions Court of

> Hamilton County, docket no. 1193142, on January 12, 2007. The Petitioner, who was in custody at the time, filed on January 22, 2007 with the Criminal Court of Hamilton County, a document entitled "Notice of Appeal, Motion to Forward Record, Brief of Appellant, Motion for Appeal Bond." . . . The Court is of the opinion and so finds that the petitioner filed a timely Notice of Appeal and that said Notice of Appeal should have been recognized by the General Session Court.

[Court Doc. No. 34-2]. Judge Rebecca Stern signed the order recognizing Plaintiff's appeal and ordered the documents relating to the case forwarded to the Criminal Court. *Id.*

Also on March 23, 2007, following appointment of defense counsel, Plaintiff again received an order of probation, signed by both Plaintiff and by his defense attorney, ordering him on probation for the balance of his sentence. [Court Doc. No. 31-10]. Defendant Harris again went over the rules of probation with Plaintiff. *See* [Court Doc. No. 31-11]. Plaintiff received a negative drug screen at that time. *Id.* A printout of the docket in Plaintiff's case in Hamilton County Criminal Court also states that on March 23, 2007 the following action was taken, "APPEAL GRANTED; REVOCATION SET ASIDE AND DEFENDANT ORDERED RETURNED TO COUNTY PROBATION, LEVEL II FOR THE BALANCE OF HIS SENTENCE." [Court Doc. No. 34-2].

Hamilton County Probation documents demonstrate that Plaintiff passed a random drug screening test on April 26, 2007. [Court Doc. No. 31-11]. On May 8, 2007 Plaintiff's name appeared on the list of probationers to be subjected to a random drug screen. [Court Doc. No. 31-11]. The instructions for participating in the random drug screen included daily telephone calls to the drug screen line followed by reporting to the drug screening office on the designated date. *Id.* The instructions included the admonition that "[f]ailure to call in/report in for your drug screen is a violation of your probation." *Id.* Plaintiff signed the instructions, noting that "I have read this form and had it explained to me by my Probation Officer who has provided me

with a copy of it. I understand that failure to call in/report in for my drug screen is a violation of my probation." *Id.* Plaintiff further signed a consent form indicating his consent to participate in the random drug testing program. *Id.*

On May 11, 2007 the Criminal Court Judge signed an order indicating that Plaintiff had failed to appear for a random drug screen on May 8, 2007. [Court Doc. No. 31-12]. The court order notes that Plaintiff "failed to report" and that "[a]ttempts to contact him by phone were unsuccessful." *Id.* The judge ordered a "Probationary capias be issued for the defendant's arrest." *Id.*

On May 13, 2007 Plaintiff was arrested for vandalism and possession of burglary tools. [Court Doc. Nos. 31-14, 36-31]. On May 14, 2007 an Affidavit of Complaint was issued for Plaintiff's arrest based on violation of his probation. *Id.* On May 25, 2007 the criminal court judge ordered the appointment of counsel for Plaintiff. [Court Doc. No. 31-15]. On July 2, 2007 Plaintiff moved for dismissal of the petition to revoke probation. [Court Doc. No. 31-16]. Plaintiff's counsel argued that Plaintiff had already served his 11 month and 29 day sentence and that the sentence expired on March 22, 2007. *Id.*

The criminal court judge granted the petition to revoke on July 9, 2007 noting:

Clearly, the defendant's sentence did not expire on 22 March 2007, as he alleges. On the revocation of probation, a defendant does not receive sentence credit for time on probation. *State v. Taylor*, 992 S.W.2d 941, 944 (Tenn. 1999). The sentence did, however, expire the next day on the vacation of the order of revocation, all of the defendant's time, whether on probation or in custody, then apparently amounting to more than the original sentence.

[Court Doc. No. 31-7]. Plaintiff was then released from custody. [Court Doc. No. 36-36].

## II.  Standard of Review

Summary judgment is appropriate if there is no genuine issue as to any material fact and

the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The burden is on the moving party to show conclusively that no genuine issue of material fact exists, and the Court must view the facts and all inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Morris v. Crete Carrier Corp.*, 105 F.3d 279, 280-81 (6th Cir. 1997); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943 (6th Cir. 1990); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).

Once the moving party presents evidence sufficient to support a motion under Fed. R. Civ. P. 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *White*, 909 F.2d at 943-44; *60 Ivy Street*, 822 F.2d at 1435. The moving party is entitled to summary judgment if the nonmoving party fails to make a sufficient showing on an essential element of the nonmoving party's case with respect to which the nonmoving party has the burden of proof. *Celotex*, 477 U.S. at 323; *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of the witnesses, and determine the truth of the matter. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *60 Ivy Street*, 822 F.2d at 1435-36. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could

reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see also Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 140 (6th Cir. 1997). If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *University of Cincinnati v. Arkwright Mut. Ins. Co.*, 51 F.3d 1277, 1280 (6th Cir. 1995); *LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).

> In addition, as the Second Circuit has noted:

> . . . properly employed, summary judgment is a useful device for unmasking frivolous claims and putting a swift end to meritless litigation. Thus, the mere possibility that a factual dispute may exist, without more, is not sufficient to overcome a convincing presentation by the moving party. The litigant opposing summary judgment, therefore, "may not rest upon conclusory allegations or denials" as a vehicle for obtaining a trial. Rather, he must bring to the district court's attention some affirmative indication that his version of relevant events is not fanciful.

*Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980) (citations omitted); *see also, Posey v. Skyline Corp.*, 702 F.2d 102, 106 (7th Cir. 1983) (noting that "the mere possibility that a factual dispute may exist, without more, is an insufficient basis upon which to justify denial of a motion for summary judgment"). Further, a "the showing of a 'genuine issue for trial' is predicated upon the existence of a legal theory which remains viable under the asserted version of the facts, and which would entitle the party opposing the motion (assuming his version to be true) to a judgment as a matter of law.'" *McGuire v. Columbia Broadcasting Sys., Inc.*, 399 F.2d 902, 905 (9th Cir. 1968) (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 1592 (1968)).

**III.     Analysis**

Section 1983 states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983. To establish a claim pursuant to Section 1983, a plaintiff must demonstrate two elements: "(1) the defendants deprived [plaintiff] of a right, privilege, or immunity secured to [him] by the United States Constitution or other federal law; and (2) the defendants caused the deprivation while acting under color of state law." *Cunningham v. Sisk*, 2003 WL 23471541, *5 (E.D. Tenn. 2003) (citing *Gregory v. Shelby County, Tenn.*, 220 F.3d 433, 441 (6th Cir. 2000)).

Section 1983 " 'creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere.' " *Alexander v. Haymon*, 254 F.Supp.2d 820, 830 (S.D. Ohio 2003) (quoting *Gardenhire v. Schubert*, 205 F.3d 303, 310 (6th Cir. 2000)). Plaintiff alleges that Defendants violated his First, Fourth and Fourteenth Amendment rights under the U.S. Constitution. U.S. Const. amend. I; U.S. Const. amend. XIV; U.S. Const. amend. IV.

### A.      Liability of Hamilton County

The U.S. Supreme Court has held that municipalities are included as persons within the meaning of Section 1983, and therefore plaintiffs may sue municipalities for relief under the statute. *Monell v. Department of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In addition, the United States Supreme Court has held that:

> [o]fficial-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent' . . . As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.

*Kentucky v. Graham*, 473 U.S. 159, 165-66, 105 S.Ct. 3099, 3105 (1985); *see also, Barnett v.*

-10-

*Clark*, No. 1:06cv235, 2008 WL 189856, *9 (E.D. Tenn. Jan. 22, 2008)(noting that "[a] claim against these Defendants in their official capacities is treated as being an action against Hamilton County"); *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Barber v. City of Salem, Ohio*, 953 F.2d 232, 237 (6th Cir. 1992). Plaintiff's claims against Defendants Harris, Long, and Hart in their official capacities are merely claims against Hamilton County. Therefore, this court will analyze them as such.

A municipality may not be held liable under Section 1983 under a theory of respondeat superior. *Bennett v. City of Eastpointe*, 410 F.3d 810, 818 (6th Cir. 2005) (citing *Monell*, 436 U.S. at 691). Municipalities are only liable under Section 1983 if they have an established policy or custom that causes the alleged injury. *See Monell*, 436 U.S. at 690.

> A municipality may be held liable only 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.' Furthermore, for municipal liability, there must be an 'affirmative link between the policy and the particular constitutional violation alleged.' The claimant has the burden of proof for establishing the existence of an unconstitutional policy and demonstrating the link between the policy and the alleged injuries at issue.

*Bennett*, 410 F.3d at 818-19 (quotations and citations omitted). Plaintiffs must prove that their particular injuries were "incurred because of the execution of the policy or custom." *Cunningham*, 2003 WL 23471541 at *14 (citing *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 405 (1997); *Gregory*, 220 F.3d at 442; *Doe v. Claiborne County, Tennessee*, 103 F.3d 495 (6th Cir. 1996)).

To establish municipal liability, a plaintiff must:

(1) identify a municipal policy; (2) establish that the municipality is responsible for promulgating the policy; and (3) show that execution of the policy caused the injury of which the plaintiff has complained.

-11-

*Hilliard v. Walker's Party Store, Inc.*, 903 F.Supp. 1162, 1178-79 (E.D. Mich. 1995).

This court has noted that a custom must " 'be so permanent and well settled as to constitute a custom or usage with the force of law.' " *Cunningham*, 2003 WL 23471541 at *14 (quoting *Monell*, 436 U.S. at 691). A plaintiff may establish a policy or custom in several ways. There may be an official policy that defendant promulgated. *Id.* Plaintiffs may also show a "pervasive custom or practice of which the [ ] lawmakers either know or reasonably should know." *Id.* (citing *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823-24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)); *see also*, *Hilliard*, 903 F.Supp. at 1179. Such a custom must be "so widespread and commonly accepted as to in effect have the force of law." *Cunningham*, 2003 WL 23471541 at *14 (citing *Brown*, 520 U.S. at 404; *Monell*, 436 U.S. at 690-91). Plaintiffs can also establish the requisite policy or custom for purposes of Section 1983 by demonstrating that an official with policymaking authority has taken a single act relating to the subject matter or area at issue. *Cunningham*, 2003 WL 23471541 at *14 (citing *City of St. Louis v. Paprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); *Pembaur v. City of Cinncinnati*, 475 U.S. 469, 480-81, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)).

Plaintiff presents no evidence of any policy or custom, either official or unofficial, on the part of Hamilton County relating to unlawful imprisonment or unlawful revocation of probation. Plaintiff suggests that Hamilton County's policy of requiring criminal defendants to sign a form indicating that they should not approach the judge hearing their case, but instead that they should have their "lawyer petition the court" on their behalf represents a policy of failure to provide due process. *See* [Court Doc. No. 31-11]. However, this policy merely represents Hamilton County's efforts to admonish defendants to follow the appropriate legal channels – through their

-12-

attorneys – for raising legal issues relating to their cases. It does not demonstrate a denial of due process of law. It is plaintiff's burden to produce evidence of a policy, an injury, and a link between the policy and the injury. *See Bennett*, 410 F.3d at 818-19. Plaintiff fails to establish evidence of the requisite policy.

Plaintiff could also demonstrate liability under Section 1983 against Hamilton County by showing that the county failed properly to train and supervise its employees. *Cunningham*, 2003 WL 23471541 at *15; *Hilliard*, 903 F.Supp. at 1180. Liability under this theory will exist only if Plaintiff "can prove that the [governmental agencies'] failure to train evidences deliberate indifference to the rights of its inhabitants such that the failure to train in effect constitutes a governmental custom or policy within the *Monell* framework." *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)); *see also, Hilliard*, 903 F.Supp. at 1180 (citing *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 123-24, 112 S.Ct. 1061 (1992)). To demonstrate liability for failure to train, the plaintiff must demonstrate that: "(1) the training program is inadequate to the tasks that the municipal actor must perform; (2) the inadequacy is the result of the municipality's deliberate indifference; and (3) the inadequacy caused the plaintiff's constitutional injury." *Hilliard*, 903 F.Supp. at 1180 (citing *Berry v. City of Detroit*, 25 F.3d 1342, 1346 (6th Cir. 1994)). Further,

> [i]n a failure to train case, the focus must be upon the 'adequacy of the training program in relation to the tasks the particular officers must perform.' It is not enough to establish that a particular officer was inadequately trained, or that there was negligent administration of an otherwise adequate program, or that the conduct resulting in the injury could have been avoided by more or better training. The plaintiff must identify a specific deficiency which is the actual cause of the constitutional deprivation.

*Hilliard*, 903 F.Supp. at 1180 (citing *City of Canton*, 489 U.S. at 390-91). Deliberate

-13-

indifference can be established in certain cases in which:

> it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.

*Berry*, 25 F.3d at 1346 (quoting *City of Canton,* 489 U.S. at 390). Evidence pertinent to a claim of deliberate indifference might be a failure to discipline including a "showing of a history of widespread abuse that has been ignored" by the municipality. *See Berry*, 25 F.3d at 1354. In *Berry* the Sixth Circuit addressed liability in the context of a failure to train issue. *Id.* In determining that the evidence in *Berry* did not support a failure to train claim, the Sixth Circuit cited evidence used to support such a claim in other cases. *Id.* at 1355. For instance, the *Berry* court cited *Spell v. McDaniel*, a Fourth Circuit case in which the plaintiff demonstrated repeated, widespread use of excessive force in the defendant police department. 824 F.2d 1380, 1392-93 (4th Cir. 1987). In *Spell* the plaintiff used the testimony of citizens who had been subjected to acts of police brutality, as well as testimony from eight present or former police officers in the police department detailing past examples of police brutality that had not been disciplined. 824 F.2d at 1392-93.

As the Sixth Circuit recently noted:

> The inadequacy of police training only serves as a basis for § 1983 liability "where the failure to train amounts to *deliberate indifference* to the rights of persons with whom the police come into contact." *Harris*, 489 U.S. at 388 (emphasis added). "To establish deliberate indifference, the plaintiff 'must show prior instances of unconstitutional conduct demonstrating that the County has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury.'" *St. John v. Hickey*, 411 F.3d 762, 776 (6th Cir. 2005) (quoting *Fisher v. Harden*, 398 F.3d 837, 849 (6[th]

-14-

Cir. 2005)) . . .

*Slusher v. Carson*, 540 F.3d 449, 457 (6th Cir. 2008).

As the Third Circuit has noted, failure to "train municipal employees can ordinarily be considered deliberate indifference only where the failure has caused a pattern of violations." *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000). *See Spell*, 824 F.2d 1392-93; *Slusher*, 2008 WL 4006687 at *6. In this case Plaintiff presents no evidence of a pattern or practice of illegally imprisoning individuals or violating First Amendment or due process rights. Therefore, he cannot demonstrate municipal liability based on either a policy or custom or on the basis of Hamilton County's failure to train. For these reasons, this court will **GRANT** Hamilton County's motion for summary judgment.

**A.     Liability of Hamilton County Sheriff's Department and Probation Department**

Plaintiff has brought suit against both the Hamilton County Sheriff's Department and the Hamilton County Probation Department. However, agencies such as police departments are not proper defendants in Section 1983 lawsuits. *See Boykin v. Van Buren Township*, 479 F.3d 444, 450 (6th Cir. 2007); *Laise v. City of Utica*, 970 F.Supp. 605, 608 (E.D. Mich. 1997). For example, as this district court has previously stated:

> A different situation exists with respect to the defendant police department. Obviously, a city police department is not a municipality. Instead, it is a municipal agency or department and, as such, would not appear to be covered by the limited holding of *Monell*, *supra*, which deals exclusively with municipalities. Nothing in *Monell, supra*, purports to change the rule that a municipal police department, in contrast to the municipality itself, is not an entity suable under 42 U.S.C. § 1983.

*Williams v. Baxter*, 536 F.Supp. 13, 16 (E.D. Tenn. 1981); *see also, Damron v. Pfannes*, 785 F.Supp. 644, 646 (E.D. Mich. 1992) ("[a] municipal police department is not a legal entity

separate from its parent city"); *Timberlake by Timberlake v. Benton*, 786 F.Supp. 676, 683 (M.D.

Tenn. 1992) (drug task force is not a "person" for purposes of Section 1983). Therefore, because

the Hamilton County Sheriff's Department and the Hamilton County Probation Department are

subsumed within the county itself and are merely analogous to an arm or agency of the county,

the court will **DISMISS** Plaintiff's Section 1983 claims against these entities.

### D.      Liability of Individuals in Their Individual Capacities

Defendants Harris, Long, and Hart contend that their actions are shielded by the doctrine

of qualified immunity. The doctrine of qualified immunity "shields 'government officials

performing discretionary functions . . . from civil damages liability as long as their actions could

reasonably have been thought consistent with the rights they are alleged to have violated.'"

*Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 172 (6th Cir. 2004) (quoting *Anderson v.*

*Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). The U.S. Supreme Court

has established a two-part test for determining whether a law enforcement officer is entitled to

qualified immunity. *See Lyons v. City of Xenia*, 417 F.3d 565 (6th Cir. 2005) (citing *Brosseau v.*

*Haugen*, 543 U.S. 194, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004)). Under this test district courts

must:

> consider whether 'the facts alleged show the officer's conduct violated a
> constitutional right.' . . . If the plaintiff can establish that a constitutional violation
> occurred, a court should ask 'whether the right was clearly established . . . in light
> of the specific context of the case, not as a broad general proposition.

*Lyons*, 417 F.3d at 571 (quoting *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d

272 (2001)). The Supreme Court has recently held that district courts maintain "flexibility" and

discretion in determining the ordering of the *Saucier* two-step procedure. *Pearson v. Callahan*,

__ S.Ct. __, 2009 WL 128768 (2009).

Once the defendants claim the affirmative defense of qualified immunity, the burden shifts to the plaintiff to demonstrate that the defendants are not entitled to the defense of qualified immunity. *Myers v. Potter*, 422 F.3d 347, 352 (6th Cir. 2005) (citing *Gardenhire*, 205 F.3d at 311). When a defendant moves for summary judgment and asserts the defense of qualified immunity, the plaintiff must "1) identify a clearly established right alleged to have been violated; and 2) establish that a reasonable officer in the defendant's position should have known that the conduct at issue was undertaken in violation of that right." *Pray v. City of Sandusky*, 49 F.3d 1154, 1159 (6th Cir. 1995) (citing *Johnson v. Estate of Laccheo*, 935 F.2d 109, 111 (6th Cir. 1991)).

Law enforcement officials will be entitled to qualified immunity " 'when their decision was *reasonable, even if mistaken.*' " *Pray*, 49 F.3d at 1158 (quoting *Castro v. United States*, 34 F.3d 106, 112 (2d Cir. 1994)). Further, " '[if] officers of reasonable competence could disagree on this issue, immunity should be recognized.' " *Pray*, 49 F.3d at 1158 (quoting *Malley v. Briggs*, 475 U.S. 335, 349, 106 S.Ct. 1092, 1100, 89 L.Ed.2d 271 (1986)).

In addition to qualified immunity, certain government officials are also subject to quasi-judicial immunity with respect to certain actions pertaining to enforcing court orders. The Sixth Circuit has described the concept of quasi-judicial immunity:

> It is well established that judges are entitled to absolute judicial immunity from suits for money damages for all actions taken in the judge's judicial capacity, unless these actions are taken in the complete absence of any jurisdiction. Moreover, absolute judicial immunity has been extended to non-judicial officers who perform "quasi-judicial" duties. Quasi-judicial immunity extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune. . . . The Supreme Court has endorsed a "functional" approach in determining whether an official is entitled to absolute immunity. Under this approach, a court "looks to 'the nature of the function performed, not the identity

-17-

of the actor who performed it.'" . . .

As other circuits have held, enforcing or executing a court order is intrinsically associated with a judicial proceeding. . . . Moreover, officials must be permitted to rely upon a judge's findings and determinations to preserve the integrity of the court's authority and ability to function. It does not seem logical to grant immunity to a judge in making a judicial determination and then hold the official enforcing or relying on that determination liable for failing to question the judge's findings. This would result in the official second-guessing the judge who is primarily responsible for interpreting and applying the law.

*Bush v. Rauch*, 38 F.3d 842, 847-48 (6th Cir. 1994) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 269, 113 S.Ct. 2606, 2613 (1993)) (other citations omitted). In *Bush* the Sixth Circuit determined that a county probate court administrator was entitled to quasi-judicial immunity for his enforcement of an order of the referee of the juvenile division. *Id.* The Sixth Circuit has held that other quasi-judicial activities, such as the issuance of a warrant, enjoy absolute immunity from suit. *See e.g., Foster v. Walsh*, 864 F.2d 416, 417-418 (6th Cir. 1988) (affirming dismissal of suit against court clerk who issued arrest warrant based on an erroneous court order); *Roland v. Phillips*, 19 F.3d 552, 557 (11th Cir. 1994); *Vosburgh v. County of Marin*, 895 F.2d 1419, 1990 WL 10032, *1 (9th Cir. 1990). As the Fifth Circuit has noted:

Enforcement of a court order is closely intertwined with the judicial function, court personnel should not serve as a lightening rod for harassing litigation, and an official charged with enforcing a facially valid court order has no choice. We therefore held that where a sheriff executes a facially valid warrant in a constitutionally permissible manner, he should not face liability for the warrant's unlawfulness.

*Foust v. McNeill*, 310 F.3d 849, 855 (5th Cir. 2002) (citing *Mays v. Sudderth*, 97 F.3d 107, 112-113 (5th Cir. 1996)).

In *Walrath v. United States*, the Seventh Circuit noted that "[m]ost federal courts, including the Seventh Circuit, have consistently held that parole board members are absolutely immune from suit for their decisions to grant, deny, or revoke parole." 35 F.3d 277, 281 (7th

-18-

Cir. 1994). In an unpublished district court decision that relied in part on *Walrath*, the court

faced a question similar to the one the Plaintiff poses here. *See Benson v. Safford*, No. 99 C

4748, 2000 WL 949458 (N.D. Ill. May 17, 2000), *aff'd*, 13 F.App'x 405 (7th Cir. 2001). In that

case the court determined that a probation officer had absolute immunity for enforcing a facially

valid order of sentence that was later found to be in error:

> At worst, therefore, Judge Grady's probation sentence exceeded his jurisdiction.
> The suggestion that this fact renders the Defendants' conduct unconstitutional is
> even weaker. Plaintiff has not explained how the fact the judge imposed an
> improper sentence (if he did) would establish that Defendants acted improperly in
> carrying out the court's orders. Indeed, governmental officials, such as
> prosecutors, and probation officers [ ] cannot be punished for seeking to enforce a
> facially valid criminal sentence, especially where the defendants' enforcement
> efforts all occurred before the criminal sentence is ultimately vacated. . . .
> All of the alleged wrongful acts occurred before Judge Grady vacated the
> probation sentence. Had the alleged acts occurred after Judge Grady vacated the
> probation sentence, the outcome of this case might be different. But such are not
> the facts of the case before the court. To the extent that Defendants' alleged
> wrongful acts were executed pursuant to Judge Grady's facially valid
> probationary sentence, the court finds that Defendants are absolutely immune
> from suit.

*Id.* at *7.

In this action the relevant court records reveal the material facts in the case, and the

parties do not dispute their accuracy. Thus, the material facts, as demonstrated by the state

criminal court record, are not in dispute. Defendants Harris, Long, and Hart have demonstrated

that they were acting pursuant to facially valid court orders signed by the criminal court judge.

*See* [Court Doc. Nos. 31-1 - 31-17]. The Defendants have demonstrated that Plaintiff was

sentenced to probation of 11 months and 29 days on March 23, 2006. [Court Doc. No. 31-2].

Plaintiff also signed documents indicating that he understood the nature of his probation. [Court

Doc. Nos. 31-4, 31-5, 31-10]. Plaintiff appears to complain that Defendants Harris, a probation

-19-

officer, Hart, the chief of the Hamilton County Jail, and former Sheriff Long somehow violated

his constitutional rights by following what appeared to be facially valid orders entered by

Criminal Court Judge Rebecca Stern. This case is highly analogous to the facts in *Benson v.*

*Safford*. 2000 WL 949458. There, the plaintiff accused the probation officer of violating his

constitutional rights by enforcing an erroneous court order. The court held that the probation

officer was entitled to absolute immunity for enforcement of a court order, even one that was

erroneous. The same analysis applies in this action. Defendants Harris, Hart, and Long were

merely enforcing criminal court orders by arresting him in May of 2007 for violating his

probation, even though the judge later determined that Plaintiff had fulfilled his probationary

sentence. [Court Doc. Nos. 31-12, 31-13]. Upon the criminal court's order that Plaintiff be

released, Defendants released Plaintiff in accordance with the court order. [Court Doc. No. 31-

17]. Plaintiff has shown no evidence that Defendants acted in violation of a court order.

Plaintiff claims that Defendant Harris violated his constitutional rights by not giving him

notice of the charges, allowing him to review evidence, giving him counsel, and allowing a

reasonable prompt hearing. The official court record demonstrates a different story, with

documents signed by Plaintiff indicating his understanding of the charges. In addition, although

Judge Stern found that Plaintiff stated "colourable claims" and ordered that an attorney be

appointed to represent Plaintiff [Court Doc. No. 31-9], following her order, the Plaintiff and his

defense lawyer again signed an order of probation for the balance of the sentence and for the

same level of supervision. [Court Doc. No. 31-10].

Plaintiff further claims that Defendant Harris violated his First Amendment rights by

issuing a capias for his arrest` after the probation period had ended. It is true that Judge Stern

eventually ordered that Plaintiff's sentence "expire[d] the next day [March 23, 2007] on the vacation of the order of revocation, all of the defendant's time, whether on probation or in custody, then apparently amounting to more than the original sentence." [Court Doc. No. 31-17]. However, the record also demonstrates that the capias issued in May of 2007 was signed and ordered by Judge Stern under her authority. Further, Judge Stern's order indicating that Plaintiff had already served his complete sentence was not issued until *July* of 2007, at which point Plaintiff was released. Therefore, Plaintiff's claims against Defendant Harris for violation of his First Amendment rights are without merit. Defendant Harris was merely acting pursuant to facially valid court orders. Moreover, the record also demonstrates that an affidavit of complaint was issued by an Officer Boyd in May of 2007 for Plaintiff's arrest in conjunction with vandalism and possession of burglary tools. [Court Doc. No. 31-14].

Plaintiff also claims that Defendants Long and Hart failed to respond to his letter to them that alleged that his probation term had expired and that their probation officer was retaliating against Plaintiff. Plaintiff presents no legal authority suggesting that Defendants Long and Hart violated his constitutional rights by failing to object to facially valid court orders. They are entitled to quasi-judicial immunity for their acts in enforcing or not interfering with valid court orders.

Although Plaintiff quibbles with certain facts based on his own understanding of the events, the court record, relied upon by both parties, demonstrates a clear picture of the material facts, including the valid court orders Defendants enforced. As the Second Circuit noted, "the mere possibility that a factual dispute may exist, without more, is not sufficient to overcome a convincing presentation by the moving party." *Quinn*, 613 F.2d at 445. Plaintiff has failed to

demonstrate "some affirmative indication that his version of relevant events is not fanciful." *Id.* Because Defendants were merely following facially valid court orders, they are entitled to quasi-judicial immunity. Plaintiff's Fourth, Fourteenth, and First Amendment claims against them will therefore be **DISMISSED**.

IV.    **Conclusion**

As discussed *supra*, Plaintiff's Section 1983 claims against Hamilton County, Ted Harris, the Hamilton County Sheriff's Department and Probation Department, Billy Long, and Jim Hart will be **DISMISSED** with prejudice.

A separate order will enter.


                    _____*/s/ R. Allan Edgar*_____
                            R. ALLAN EDGAR
                    UNITED STATES DISTRICT JUDGE